I respectfully dissent in this case. Plaintiff has a high school education with some additional post high school education, although he has not completed a degree. During his work career Plaintiff has mostly done jobs involving manual labor that includes standing up and lifting. In or around February, 2010, Plaintiff was assigned by Resource Management to work at a Caterpillar Plant in Sanford, North Carolina. As a part of the regular morning duties, Plaintiff inspected the forklift which he used as equipment during the performance of his duties.
On the morning of the alleged injury by accident, Plaintiff noted there was no inspection card present, nor was there an inspection clip that holds the inspection card on the forklift to which he was assigned. He nevertheless performed a visual inspection to the forklift. Plaintiff reported the absence of the inspection card to his supervisor, a Caterpillar employee who physically supervised Plaintiff on site. The Caterpillar employee instructed Plaintiff to go ahead and he would get him a card later, which he never did. Plaintiff testified that on prior occasions other employees have used forklifts when there with no inspection card on the forklift.
During orientation at Caterpillar, Plaintiff and other operators on site received training indicating that these forklifts should not be exited before coming to a complete stop. Nevertheless, other employees on the worksite at Caterpillar have on occasions operated the same type of forklift in the presence of supervisors, while engaging in the practice of exiting the back of the forklift while the forklift was still slightly in motion. No other employees or contract *Page 12 
operators engaging in this practice in the presence of supervisory personnel as observed by Plaintiff were ever terminated for exiting the forklift in this manner.
The stand-up forklift upon which the claimant worked was electric powered and it contained what is called a "dead man's pedal" or "dead man's switch" in the floor. When the "dead man's pedal" is stepped on it starts the forklift and disengages the brakes. When you lift up and take your foot off the "dead man's pedal" the brakes are engaged. Immediately before the incident in question, Plaintiff had gone outside to the loading dock for purposes of taking cardboard, which may weigh as much as a ton, out of the cardboard compactor. In order to do this job, he had to first park and exit the forklift to deal with the compactor itself. Because two other employees on two other forklifts were in the location position where he would normally park, Plaintiff backed the forklift onto a ramp which leads down from the loading dock upon which the cardboard compactor rests. He backed the forklift onto the incline and stepped off the back of the forklift just after it came to a complete stop. This act should normally engage the brakes by virtue of the driver's foot coming off of the "dead man's pedal". Just as he exited, and while he was still at the back of the forklift, Plaintiff noticed that the forklift was beginning to roll down the hill. He jumped back on the forklift, engaged the "dead man's pedal" in order to start the forklift. Before he could start the forklift, the speed of the roll backwards down the hill increased until it struck a pallet with machinery on it trapping Plaintiff's left foot during the impact.
The impact was so great that it ripped the sole from Plaintiff's steel-toed boot on his left foot. Other employees had to extricate the Plaintiff from the forklift pinning him to the pallet bearing machinery. Plaintiff was immediately carried by the rescue responders to the local emergency room based on the injuries to his foot. His foot was put in a moon boot and he was *Page 13 
given medication for pain.
Over the next couple of days Plaintiff filed two incident reports stipulated into the record describing what had taken place. Caterpillar decided that they did not want Plaintiff to continue at the Sanford plant because he violated a safety rule. On or about March 29, 2010, Plaintiff communicated with Derek Smith, his supervisor and contact person at Resource, MFG. On this occasion Mr. Smith admitted he had seen a videotape at Caterpillar of the incident which he did not feel was conclusive of Plaintiff's alleged violation of a safety protocol, including exiting the forklift while it was still in motion. Nevertheless, Mr. Smith indicated Caterpillar did not want Plaintiff to return to work because he allegedly had not filled out a safety card on this particular day to verify inspection of the vehicle. This firing is clearly pretextual.
Plaintiff testified that although he was not to go back to work at Caterpillar when he recovered from his foot injury, he believed he was being considered for work at Resource MFG. In fact, Plaintiff continued to drop off medical status notes to Resource MFG at their offices in Sanford all the way up until the Fall of 2010, thinking that when he had recovered from his injury he would have some continued job opportunities. During this same period of time, Resource MFG determined that Plaintiff was not going to continue his employment with them.
Plaintiff continues to have a stress fracture and to walk on crutches as a result of the March 23, 2009 injury by accident. Plaintiff has either required a cast or a special shoe with a brace for his left foot injury. Plaintiff's work has been limited to light duty without extensive walking.
Prior to going to work with Caterpillar, Plaintiff had already been working for Ross Dress-for-Less, which is an apparel store. His job was primarily in security, although he did some work as a greeter at the front door. In May of 2010, Plaintiff returned to work for Ross *Page 14 
Dress-for-Less on a limited basis, with an accommodation where he could sit down with a stool because of his foot. When that accommodation of a stool was no longer available by Ross Dress-for-Less, he was no longer able to work. Plaintiff was able to return to Ross Dress-for-Less in September, but was still on limited duty with jobs not involving the walking and standing that he had performed before.
The undersigned finds that Plaintiff was terminated from his employment with Caterpillar for reasons of his compensable injury by accident resulting in loss time and not because of the reasons now attributed by Caterpillar and Resource MFG, for either violation of safety procedures by either the failing to complete a safety inspection card, or exiting a moving forklift. Even if Plaintiff did act in violation of the Caterpillar safety procedure by exiting the forklift while it was slightly still in motion, other persons working at the same Caterpillar plant had engaged in the same alleged violation of safety procedures, yet they had been permitted to remain at the Caterpillar plant and have not been terminated. This selective enforcement of safety rules should not stand.
I dissent from the majority opinion based upon the temporary partial disability benefits provided to Plaintiff. Defendants are not entitled to a credit for Plaintiff's part time earnings at Ross post injury by accident except to the extent those exceed his average part-time earnings with Ross pre-injury. Mark Hair v.Northwest Corporation, Self-Insured and Constitution State ServiceCompany, Servicing Agent, (IC No. 569750, Opinion and Award for the Full Commission by Bernadine Ballance, filed April 7, 1999). Defendants should be paying Plaintiff retroactively weekly compensation in the amount of $287.32 and in the future until further order of the Commission, except that the period for payment shall be a maximum of 300 weeks.
I would have found the following Conclusion of Law: *Page 15 
 Based upon the totality of the credible vocational and medical evidence of record, including his work for Ross Dress-for-Less, and as a result of his 23 March 2010 injury by accident, Plaintiff is entitled to be paid by Defendants temporary partial disability compensation at the rate of two thirds the difference between his average weekly wage at the time of his 23 March 2010 injury of $430.77 and the average weekly wages he earned thereafter while working for Ross Dress-for-Less commencing in May 2010 only to the extent those subsequent earnings exceed the average earnings he made pre-injury in the second job with Ross and continuing through the present until such time as he returns to work at his pre-injury wage level, or further Order of the Commission, but subject to the statutory maximum period of three hundred (300) weeks. G.S. § 97-30.
I would have awarded the following Award:
 Defendants shall pay to Plaintiff temporary partial disability compensation at the rate of two thirds the difference between his average weekly wage at the time of his 23 March 2010 injury of $430 .77 and the average weekly wages he earned thereafter while working for Ross Dress-for-Less commencing in May 2010 only to the extent those subsequent earnings exceed the average earnings he made pre-injury in the second job with Ross and continuing through the present until such time as he returns to work at his preinjury wage level, or further Order of the Commission, but subject to the statutory maximum period of three-hundred (300) weeks. From the amounts having accrued, this compensation shall be paid to Plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
I further dissent and would award Plaintiff attorneys' fees from the Defendants. N.C. Gen. Stat. § 97-88.1.
 S/________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1